# Rider, Appellant, v. York Haven Water and Power Co., Appellant.

*Waters—Diversion of waters—Riparian owners—Equity—Injunction—Decree.*

1. A bill in equity for an injunction alleged that plaintiff was a riparian owner on the eastern shore of a river, and that defendant, a riparian owner on the western shore, had placed dams in the river above plaintiff's land and had deepened the western channel, whereby the water which would otherwise flow through the eastern channel past plaintiff's land, was largely diverted to the western channel. The bill prayed that defendant be enjoined from diverting the waters of the river from the eastern channel by obstructions or by dredging in the western channel, and that it be required to replace in the western channel the sand and stones which it had removed therefrom. The findings of the chancellor that plaintiff was a riparian owner, and that defendant's acts had caused plaintiff an "injury and special damage differing in kind and degree from the injury and damage to the general public," were supported by the evidence. The court properly enjoined the defendant from maintaining obstructions in the eastern channel which could in any way diminish the actual flow of water which would otherwise flow through the eastern channel in front of plaintiff's farms.

2. In such a case plaintiff's prayer for a mandatory order to compel the defendant to replace the sand and stone to be removed from the eastern channel back into the western channel from which it was originally taken, "to the end and to the full effect that the said waters of the eastern channel be restored to the natural flow as before any interference therewith was had by the defendant," and that the defendants shall be restrained from at any time in the future dredging or deepening the western channel so as to draw the water from the eastern channel was properly refused, as such an order would be difficult if not impossible to enforce, and is not necessary to effective relief in the case.

3. In such a case neither the decree nor the findings of the chancellor have or justifiably can be given the effect of depriving the defendant of any rights, powers, or privileges to which it may be entitled under Mill Dam Act of March 3, 1803, 4 Sm. Laws 20; or under the Water Commission Acts of May 4, 1905, P. L. 385, and May 28, 1907, P. L. 299, or which it may enjoy as a public service corporation vested with the right of eminent domain.

*Equity practice—Decrees—Equity Rule 84.*

4. No error was committed by the court in such case in entering a decree drawn by the judge who tried the case, where the decree afforded plaintiff all 'the relief to which he was entitled. The direction of Equity Rule 84, that "the decree shall be drawn by the solicitor of the parties in whose favor it is," was intended merely for the relief and assistance of the court; it was not intended to limit the power of the court to formulate its own decrees.

Argued May 26, 1913. Appeals, Nos. 5 and 16, May T., 1913, by defendant and plaintiff respectively, from decree of C. P. Dauphin Co., Equity Docket, No. 448, awarding an injunction in case of John B. Rider v. York Haven Water & Power Company. Before FELL, C. J., BROWN, MESTREZAT, POTTER, ELKIN, STEWART and MOSCHZISKER, JJ. Affirmed.

Bill in equity for a mandatory and restraining injunction, and other relief. Before McCARRELL, J.

The facts appear by the opinion of the Supreme Court.

The court on final hearing awarded the injunction and ordered the removal of the obstructions complained of, but refused to compel defendant to replace certain stones, etc., which it had removed from certain parts of the river. The decree was drawn by the judge, not by the plaintiff's solicitor. Both parties appealed.

*Errors assigned* by plaintiff were various findings of fact and law of the trial judge and the decree of the court.

*Errors assigned* by defendant were in overruling various exceptions to the findings of the trial judge, and the decree of the court.

*John R. Geyer*, with him *John E. Fox* for John B. Rider.

*Charles L. Bailey, Jr.,* and *Reynolds D. Brown,* with them *LeRoy J. Wolfe* and *Malcolm Lloyd, Jr.,* for York Haven Water & Power Company.

OPINION BY MR. JUSTICE MOSCHZISKER, June 27, 1913:

The plaintiff claimed to be a riparian owner of a tract of land, long used as his family homestead, located on the eastern shore of the Susquehanna River opposite Duffy's Island. He complained that the defendant had obstructed the river between this land and the island, known as the Eastern Channel, in such a way and manner as to divert the water and make the channel practically dry during the summer season, causing irreparable damage to his property. The court below entered a decree by which the defendant was "perpetually enjoined" from placing in the eastern channel of the Susquehanna river above the property of the plaintiff "any dam, wing, wall or other obstruction whatsoever which can in any way diminish the actual flow of water which would otherwise find its course through the eastern channel of said river in front of the premises of the plaintiff"; and wherein it was "further ordered, adjudged and decreed that the defendant shall ......entirely remove from the eastern channel of the said river all dams, walls or obstructions heretofore . placed therein by it or under its authority, extending from above the head of Duffy's Island diagonally across the said channel to or near the Dauphin county shore." Both sides have appealed from this decree. Without passing specifically upon each of the numerous assignments of error, we will discuss the essential points raised thereby and dispose of the two appeals together.

The defendant contended that the plaintiff was not a riparian owner, in that the proofs established the fact that the strip of land immediately along the river front had been condemned for the purposes of the Pennsylvania canal and now belonged to the Pennsylvania Railroad Company; while the plaintiff contended that the

evidence showed that the land condemned for canal purposes did not extend to the river front and that the strip in question belonged to him. The court below found this issue of fact in favor of the plaintiff and decided that he was a riparian owner. We are not convinced of error in this respect, and will not disturb the finding.

The chancellor found as a fact that "the defendant has placed in the river across the eastern channel obstructions of various kinds for the purpose of diverting the flow of water from the said eastern channel in order that it may secure a larger supply for its own corporate purposes and has thus diverted much of the water from the said eastern channel"; further, that this act caused the plaintiff "injury and special damage differing in kind and degree from the injury and damage to the general public." There is sufficient evidence to sustain these findings, and under the authorities cited and recognized in Griffiths v. Monongahela Railroad Co., 232 Pa. 639, the plaintiff is entitled to the relief granted him. But he maintains that he should have been given a greater measure of relief, that a mandatory order should have been made upon the defendant compelling it to replace the sand and stone to be removed from the eastern channel back in the western channel from which it was originally taken, "to the end and to the full effect that the said waters of the eastern channel be restored to the natural flow as before any interference therewith was had by the defendant," and that the defendant should be restrained from at any time in the future dredging or deepening the river between Duffy's Island and the western shore of the river, known as the western channel, so as to draw the water from the eastern channel. It would be difficult if not impossible properly to enforce such a mandatory order, and it was not necessary to effective relief in this case; hence, the court below committed no error in refusing it. The plaintiff is not a riparian owner on the western channel and the de-

fendant is; we do not think the court below would have been justified in anticipating that the latter would in the future abuse its rights as such owner to the injury of the former, but if such a state of affairs should arise, there is nothing in the present adjudication which will prevent the plaintiff from claiming the protection of equity or asserting his rights at law.

It is true that Equity Rule 84 directs "that the decree shall be drawn by the solicitor of the parties in whose favor it is"; but, as stated by the learned trial judge, "this rule was intended for the relief of the court so as to enable the court to avail itself of the aid of counsel, if so desired; it was not intended to limit the power of the court to formulate its own decrees." We feel that the decree as entered afforded the plaintiff all the relief to which he was entitled.

After what we have already said in disposing of the plaintiff's case, it is only necessary to refer to two points suggested by the defendant's appeal. This appellant seems to fear that its corporate rights and franchises may be affected or prejudiced in the future by these proceedings; as to this, it is sufficient to say that neither the decree nor the findings of the chancellor have or justifiably can be given the effect of depriving the defendant of any rights, powers or privileges to which it may be entitled under the Mill Dam Act of March 3, 1803, 4 Sm. Laws 20, or under the Water Commission Acts of May 4, 1905, P. L. 385, and May 28, 1907, P. L. 299, or which it may enjoy as a public service corporation vested with the right of eminent domain.

Both appeals are dismissed and the decree is affirmed, the costs to be charged against the respective appellants.