# Rider v. York Haven Water and Power Company, Appellant.

*Water companies—Unlawful diversion of water—Trespass—Measure of damages—Permanent or transient injury—Punitive damages—Excessive punitive damages—Eminent domain—Power to condemn water—Evidence.*

1. Where an injury to real estate is permanent the measure of damages is the difference in market value, before and after the injury, or the cost of removing the obstruction whichever is the lower amount.

2. Where the land of a riparian owner has been permanently injured by an unlawful diversion of water he may not treat the trespass as of a transient character and sue for special damages.

3. Punitive damages must not be so excessive as to indicate that the jury was influenced by passion or prejudice and must have some reasonable relation to the injury and cause of it and must not be disproportionate to the one or the other.

4. A water company invested with the power of eminent domain can lawfully appropriate the waters of a stream outside the limits of the district for which it was incorporated, if the purpose be to supply the public in the territory where under its charter it has the right to transact its corporate business.

5. Plaintiff whose land had been injured by the diversion of water by defendant company brought suit in trespass for damages as for a transient injury and the court instructed the jury to award damages on this basis. The evidence was in conflict as to whether the injury to plaintiff's land was permanent or transient. The record did not show whether defendant company had the power of eminent domain but the court over defendant's objection allowed plaintiff to offer portions of a bill in equity and answer in a former proceeding between the same parties to show that it had not the power to appropriate the water of the stream in question, on the theory that a water company cannot condemn water outside the district in which its plant is located. The jury found a verdict for compensatory damages of $1,000 and for punitive damages of $2,700. *Held,* reversing the judgment of the lower court, that (1) the jury should have been instructed to find special damages only if they believed the injury to be transient; (2) that the admission of the evidence to show lack of power to condemn the stream was error and (3) that the punitive damages awarded were disproportionate to the compensatory damages.

Argued May 24, 1915. Appeal, No. 17, May T., 1915, by defendant, from judgment of C. P. Dauphin Co., Jan. T., 1913, No. 80, for plaintiff on verdict for plaintiff, in case of John B. Rider v. York Haven Water and Power Company. Before BROWN, C. J., MESTREZAT, POTTER, ELKIN, STEWART, MOSCHZISKER and FRAZER, JJ. Reversed.

Trespass to recover damages for injuries to plaintiff's land resulting from the maintenance of a dam. Before McCARRELL, J.

The opinion of the Supreme Court states the facts.

Verdict for plaintiff for $1,000 for injuries sustained and for $2,700 for punitive damages, and judgment thereon. Defendant appealed.

*Errors assigned* were rulings on evidence and instructions to the jury.

*Reynolds D. Brown,* with him *Charles L. Bailey, Jr.,* and *Malcolm Lloyd, Jr.,* for appellant.—The dam was a permanent structure and the proper measure of damages was the difference in the market value of the land before and after the construction thereof: Miller v. Hanover & McSherrytown Water Co., 240 Pa. 393; Wagner v. Purity Water Co., 241 Pa. 328; Carpenter v. Lancaster, 212 Pa. 581; McFadden v. Johnson, 72 Pa. 335; Good v. Altoona, 162 Pa. 493; Justice v. Nesquehoning Valley Railroad Co., 87 Pa. 28.

It was error to permit recovery of punitive damages: Keiser v. Mahanoy City Gas Co., 143 Pa. 276.

Even though punitive damages were properly allowed, the amount of the punitive damages recovered in this case was excessive: Willis v. McNeil, 57 Texas 465; International & Great Northern Ry. Co. v. Telegraph Tel. Co., 69 Texas 277, (5 S. W. Repr. 517); Houston & Texas Central R. R. Co. v. Nichols, 9 Amer. and Eng. Ry. Cases 361.

*John R. Geyer,* with him *John E. Fox,* for appellee.— The causes of the injuries complained of in this case can be abated. Compensation for the injuries sustained until the date of the writ was therefore the proper measure of damages: Hart v. Evans, 8 Pa. 13; Hannum v. Borough of West Chester, 63 Pa. 475; Robb v. Carnegie Bros. & Co., 145 Pa. 324; Jones v. F. S. Royster Guano Co., 65 S. E. Repr. 361; Southern Ry. Co. v. Poctker, 91 N. E. Repr. 610; Danielly v. Cheeves, 94 Ga. 263, (21 S. E. Repr. 524); Cumberland & Oxford Canal Corp. v. Hitchings, 65 Me. 140; Markt v. Davis, 46 Mo. App. 272; Uline v. New York Cent. & Hudson River R. R. Co., 101 N. Y. 98.

The defendant's course of conduct shows such an unlawful, wrongful, reckless and wanton disregard of the plaintiff's right, as to be in itself malicious: Nagle v. Mullison, 34 Pa. 48; McCoy v. Danley, 20 Pa. 85; Ellis v. Academy of Music, 120 Pa. 608; Pittsburgh, Cincinnati & St. Louis Ry. Co. v. Lyon, 123 Pa. 140; Greeney v. Penna. Water Co., 29 Pa. Superior Ct. 136.

It is not within the power of the court to reverse the judgment of the jury on the amount of punitive damages which should be recovered: Lister v. Campbell, 46 S. W. Repr. 876; Summers v. Keller, 152 Mo. App. 626, (133 S. W. Repr. 1180); St. Louis Southwestern Ry. Co., of Texas v. Thompson, 108 S. W. 453; Bentley v. Fischer Lumber & Mfg. Co., 51 La. Ann. 451, (25 So. Repr. 262).

OPINION BY MR. JUSTICE ELKIN, July 3, 1915:

The plaintiff sued in trespass to recover damages for the alleged unlawful diversion of the waters of a stream to the injury of the complaining riparian owner. In Rider v. York Haven Water & Power Co., 242 Pa. 141, it was decided that Rider was a riparian owner and as such entitled to be protected against the unlawful diversion of the waters of the stream. That was a proceeding in equity and the controversy between the parties

revolved around the disputed question whether Rider
was in fact a riparian owner. This question having
been decided in his favor the present suit was brought
to recover damages for the injuries alleged to have been
sustained. The numerous assignments of error raise
two fundamental questions for consideration: (1) Did
the court err in instructing the jury as to the proper
measure of damages under the facts of the case; and,
(2) were the rulings correct and adequate in respect to
punitive damages? The learned court below treated the
case as a trespass of a transient character and instructed
the jury to award damages upon this theory. The de-
fendant company contended in the court below, and con-
tends here, that the building of the dam in the stream
was a permanent obstruction, and this having caused the
injuries about which complaint is made, the measure of
damages is the difference in market value of the lands
before and after the injury. It is ably argued for ap-
pellee, and the argument is supported by numerous au-
thorities called to our attention, that one whose land is
injured is not bound to assume that the obstruction com-
plained of will be a permanent one, so as to require him
to sue for damages upon the basis of a permanent in-
jury; but that he has the right to regard the trespass
as of a transient character, and instead of bringing one
action for the whole injury to the value of his property
resulting from the original obstruction he may sue for
the amount of such injury as he suffers from its con-
tinuance. Where the facts warrant their application
both positions are sound in principle and equally well
supported by precedent and authority. But it does not
follow that the damages in every case of this general
character should be determined upon this basis. What
rule should be applied depends very largely upon the
facts of each particular case in which the question arises.
In our own State more or less confusion has arisen
in determining what rule should be applied as the
proper measure of damages in actions of this kind. This

court has taken occasion to review the authorities in several recent cases, and as a result it must be accepted as finally settled in this jurisdiction that where the injury to real estate is permanent, the measure of damages is the difference in market value, before and after the injury, or the cost of removing the obstruction, whichever is the lower amount. This was the view expressed by our Brother POTTER in Rabe v. Schoenberger Coal Co., 213 Pa. 252, in which many of our cases are referred to and commented upon. The decision in that case simply followed what had been decided in many previous cases, and it stands as authority upon the question of the proper measure of damages where the injury to real estate is permanent. This rule has been adhered to in the following cases: Schuylkill Nav. Co. v. Farr, 4 W. & S. 362; Seely v. Alden, 61 Pa. 302; Hanover Water Co. v. Ashland Iron Co., 84 Pa. 279; Vanderslice v. Philadelphia, 103 Pa. 102; Fulmer v. Williams, 122 Pa. 191; Williams v. Fulmer, 151 Pa. 405; Good v. Altoona, 162 Pa. 493; Thompson v. Citizens Traction Co., 181 Pa. 131; Carpenter v. Lancaster, 212 Pa. 581; Miller v. Hanover & McSherrytown Water Co., 240 Pa. 393. The same question was considered in Wagner v. Purity Water Co., 241 Pa. 328, in which it was held that the proper measure of damages where a water company appropriated the waters of a stream without exercising the power of eminent domain was the difference in market value of the land of a riparian owner before and after the appropriation. In that case, as in the present one, the action was in trespass, but it was conceded that the Purity Water Company had the power of eminent domain, which is a disputed question in the case at bar. Appellant insists that the case just cited rules the present one upon the question of the proper measure of damages, while appellee contends that it has no application because the injuries complained of here were not permanent. One expression in the Wagner case needs explanation. It was there stated that as to the measure

of damages "the rule is the same whether the original entry or appropriation was lawful or unlawful," and McFadden v. Johnson, 72 Pa. 335, was cited to sustain the proposition. The citation was the result of an error in transcribing the opinion which omitted a few sentences from the original draft. The error was not discovered in time to make the correction before publication. What we did intend to say in the Wagner case, and what we repeat now, is that a water company vested with .the power of eminent domain, but having entered the land or appropriated the water without exercising the power as the statutes require, is answerable in the same measure of damages to the landowner ·as if the original entry or appropriation had been lawfully made. This means that the proper measure of damages in such cases is the difference in market value of the land affected before and after the injury. The same rule was applied to street railway companies long before they were invested with the power of eminent domain: Thompson v. Citizens Traction Co., 181 Pa. 131; Becker v. Lebanon & Myerstown St. Ry. Co., 30 Pa. Superior Ct. 546.

The same rule was applied to the case of an injury resulting to a riparian owner from the pollution of a stream by a municipal sewer system where the injury was permanent:. Carpenter v. Lancaster, 212 Pa. 581, 585. In that case it was contended that at the time the city built its sewers it did not have the right to appropriate private property as a part of its sewer system, and this was suggested as a reason why the diminished value of the land was not a proper measure of damages. The present chief justice speaking for our court answered this contention saying: "If the city had possessed such right at the time it connected its covered sewers with the stream, and had injured the property of the plaintiff in the exercise of that right, the measure of any damages sustained by her would have been just the one fixed on the present trial. For permanent injuries sustained by

her she is to receive the difference in the value of her property before and after the commission of the injury, whether caused in the exercise of the right of eminent domain or by pure trespass: Thompson v. Citizens Traction Co., 181 Pa. 131." Here, again, the rule is reasserted that where the injury is permanent the measure of damages is the same in an action of trespass as in a proceeding to condemn under the power of eminent domain.

The force of these authorities is conceded by learned counsel for appellee, but it is earnestly contended that the measure of damages is optional with a riparian owner whose land has been injured. In other words that the landowner can elect to treat the trespass as of a transient character and sue for special damages, or he can proceed upon the theory that the injury was permanent and recover upon this basis. There are cases in which this view has been sustained, but as was pointed out in Rabe v. Shoenberger Coal Co., 213 Pa. 252, the sounder rule is that when the injury is permanent, the measure of damages is the difference in market value, before and after the injury, unless the cost of removing the obstruction would be less, in which event the latter measure of damages should be adopted. Then, again, if the landowner has the right to sue for special damages, and the offending company is bound by the rule which makes it answerable for permanent injuries, a double standard is set up for ascertaining the damages in such cases, one for the riparian owner and another for the condemning company. There does not seem to be any good reason for making such a distinction; for if one party to the controversy is bound to answer on the basis of a permanent injury, it would seem as though the other party should be likewise compensated for the injury sustained by him. Whatever measure of damage is held to be applicable in such cases should be equally binding upon both parties.

It necessarily follows from what appears in this dis-

cussion that if the appellant company had the power of
eminent domain, but failed to properly exercise that
power in the assertion of its rights, and did something
which caused the lands of appellee to be injured, it is
answerable in damages on the basis of a permanent in-
jury.    Upon the record here presented we cannot decide
whether appellant was invested with the power of emi
nent domain.    This question was eliminated at the trial
in the court below and cannot be determined upon this
appeal.    We, therefore, refrain from expressing any
opinion upon the right of appellant to assert such a
power.

If the injuries complained of were permanent in char-
acter, and the lands of appellee were thus damaged, ap-
pellant would be answerable in damages on the basis
of a permanent injury.    Whether the injuries were
permanent is a disputed question in the case, the conten-
tion of appellant being that they were and of appellee
that they were not.    This raises a disputed question of
fact which is ordinarily for the jury under proper in-
structions of the court.    The evidence may be such as to
warrant a court in deciding that the injury was perma-
nent, or that it was transient, but when this is done
there must be no doubt as to the inference to be drawn
from the established facts.    When there is a conflict of
testimony upon this point, or where different inferences
may be drawn from the facts, it is usually a question
for the jury.    In the case at bar our conclusion is that
this question should be submitted to the jury: Good v.
Altoona, 162 Pa. 493; Wagner v. Purity Water Co., 241
Pa. 328.    If the jury should find that the injuries com-
plained of were permanent in character, the measure
of damages would be the difference in market value of
the lands affected, before and after the injury; on the
other hand, if the jury should find that the injuries were
of a transient character, appellee can recover special
damages under the rule applicable to such cases.    These
suggestions only apply in the event it should be held

that appellant is not invested with the right of eminent domain.

In the present case the jury in a separate item found the compensatory damages sustained by the plaintiff to be $1,000.00, to which sum was added $2,700.00 for punitive damages, making the total verdict $3,700.00. We know of no case in our own State where punitive damages were allowed in almost treble the amount of the actual damage sustained. When torts are committed wilfully, maliciously, or so negligently as to indicate a wanton disregard of the rights of others, punitive damages may be awarded: Pittsburgh, Cincinnati & St. Louis Ry. Co. v. Lyon, 123 Pa. 140. Such damages are allowed upon the theory that the offender has wilfully, maliciously, or wantonly disregarded the rights of the complaining party. Such conduct will not be presumed and there must be evidence from which such inferences may be reasonably drawn. We are not prepared to say that there was no evidence to submit to the jury on this question but the case demanded careful and definite instructions as to what the law requires to warrant an award of punitive damages. Upon this point what was said in Keil v. Chartiers Val. Gas Co., 131 Pa. 466, is peculiarly applicable.

It is difficult, if not impossible, to lay down any definite rule as to the amount of punitive damages which may be allowed under the facts of a particular case. However this may be, we quite agree with the views expressed by the Supreme Court of Kentucky in Buford v. Hopewell, 140 Ky. 666, where it was said: "We know no general rule upon the subject of awarding punitive damages except that the damages must not be so excessive as to indicate that the jury was influenced by passion or prejudice, and must have some reasonable relation to the injury and cause of it, and must not be disproportionate to the one or the other." Under the evidence of the case at bar the punitive damages were entirely disproportionate to the compensatory damages

awarded. The learned trial judge evidently entertained the same view but felt constrained to sustain the verdict upon the theory that the testimony was sufficient to warrant a finding that the plaintiff had been actually damaged in an amount much larger than the jury found. We cannot regard this as a sufficient reason for approving an award of punitive damages so disproportionate to the amount of compensatory damages allowed.

The first assignment of error demands some attention. Appellant complains that the plaintiff was permitted to offer in evidence certain paragraphs of a bill filed in the equity proceeding and the answers thereto for the purpose of showing that the defendant company did not have the power of eminent domain in the sense at least that it could not condemn the waters of the stream in one district to be used in another. The evidence was admitted over the objection of the defendant. The offer was predicated upon the theory that a water company, even if under its charter it had the power of eminent domain, could not appropriate the waters of the Susquehanna river at the point in question because the appellant made use of that water at the place where its power plant was located, which was in another district. This is a misapprehension of what our cases have decided as will appear in Mier v. Citizens Water Company, in an opinion handed down herewith. A water company, invested with the power of eminent domain, can lawfully appropriate the waters of a stream outside the limits of the district for which it was incorporated, if the purpose be to supply the public in the territory where under its charter it has the right to transact its corporate business: Bland v. Tipton Water Co., 222 Pa. 285; Blauch v. Johnstown Water Co., 247 Pa. 71. In this view of the law we find it necessary to sustain the first assignment.

Other interesting questions are raised by this record but we find it impossible to discuss them in detail without unduly prolonging the opinion. We have discussed

the important questions presented for our consideration and what has been said will serve as a guide for all concerned when the case is again tried. It would seem to be in the interest of both parties to have the question determined in the proceeding now pending, whether the appellant company does possess the power of eminent domain, before the case at bar is again tried. With this question finally settled the rule as to the proper measure of damages will be less complicated.

All those assignments of error at variance with the views herein expressed are sustained.

Judgment reversed and a venire facias de novo awarded.